**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENITH FLEX**<br>　　　　　　Plaintiff**,**<br>v.<br><br>**ALLENTOWN POLICE PENSION FUND ASSOCIATION,<br>MATTHEW TUERK,<br>JEFF GLAZIER,<br>BINA PATEL,<br>CORY MARSTELLER,<br>RYAN KOONS,<br>IBOYLA BALOG,<br>BRYAN GUZELEY,<br>AC JAMES GRESS,<br>DARYL HENDRICKS,<br>ERIC STAUFFER,<br>GEORGE SCOCCA,<br>DINA SCOCCA,<br>And JOHN DOE's 1-5,**<br><br>　　　　　　Defendants**.** | **CIVIL ACTION NO.:**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

### I.    INTRODUCTION

Jenith Flex ("Plaintiff"), by and through her undersigned counsel, brings this action against the Allentown Police Pension Fund Association, Matthew Tuerk, Jeff Glazier, Bina Patel, Cory Marsteller, Ryan Koons, Iboyla Balog, Bryan Guzeley, AC James Gress, Daryl Hendricks, Eric Stauffer, George Scocca, Dina Scocca, and John Does 1-5 for violations of 42 U.S.C. § 1983. Plaintiff seeks injunctive relief, monetary damages, and all other relief that this Court, in its discretion, deems just and proper.

Defendant George Scocca and Defendant Dina Scocca engaged in three (3) year intentional and reckless campaign to estrange Plaintiff from her sick and dying husband – Anthony Scocca - freeze Plaintiff out of joint accounts with her husband, divest Plaintiff of insurance benefits and other financial benefits required for the care of her husband, fraudulently manipulated the finances of Plaintiff and her husband, falsified marriage information to the Commonwealth of Pennsylvania after the death of Plaintiff's husband, and cruelly and maliciously spearheaded efforts to deprive Plaintiff of police pension benefits that are still due and owing to Plaintiff by collaborating with and exercising malicious influence upon the Allentown Police Pension Fund Association. Plaintiff's emotional distress level from these events are beyond extreme. On July 26, 2023, the Allentown Police Pension Fund Association and its members (all named Defendants other than George Scocca and Dina Scocca) issued a decision purporting to nullify the marriage between Plaintiff and her husband, a then-recently deceased Allentown police officer. This decision, based on Pennsylvania divorce laws, could only have been made by a court of competent jurisdiction. This decision was made without due process and deprived Plaintiff of her property right to surviving spouse disability pension benefits that flowed through her husband's pension.

## PARTIES

1.   Jenith Flex is an adult individual residing at 512 Brookfield Cir. Macungie, Pennsylvania.

2.   Defendant Allentown Police Pension Fund Association ("Association") is seated in Lehigh County, Pennsylvania, it is a local administrative agency, and its primary function is to administer the Allentown Police Pension Fund.

3.   Defendant Matthew Tuerk is an adult individual, Mayor of the City of Allentown, Pennsylvania, and the lead member of the Association.

4.   Defendant Jeff Glazier is an adult individual and member of the Association.

5. Defendant Bina Patel is an adult individual and member of the Association.

6. Defendant Cory Marsteller is an adult individual and member of the Association.

7. Defendant Ryan Koons is an adult individual and member of the Association.

8. Defendant Iboyla Balog is an adult individual and member of the Association.

9. Defendant Bryan Guzley is an adult individual and member of the Association.

10. Defendant AC James Gress is an adult individual and member of the Association.

11. Defendant Eric Stauffer is an adult individual and member of the Association.

12. Defendant George Scocca is an adult individual residing in Kunkletown, Pennsylvania.

13. Defendant Dina Scocca is an adult individual residing in Kunkletown, Pennsylvania.

14. John Doe's 1-5 are adult individuals who assisted with, contributed to, were decision makers in furtherance of, or conspired to deprive Plaintiff of her right to due process before being deprived of property.

## JURISDICTION AND VENUE

15. The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 as Plaintiff's claims under 42 U.S.C. § 1983 arise under federal law.

16. The Court has personal jurisdiction over Plaintiff and Defendants because most or all of the acts giving rise to this action occurred in Lehigh County, Pennsylvania.

17. The Association held the hearing to deprive Plaintiff of her right to surviving spouse disability pension benefits in Lehigh County, Pennsylvania.

18. The "Order" depriving Plaintiff of her right to surviving spouse disability pension benefits was written and issued in Lehigh County, Pennsylvania.

19. Venue is proper in this forum because the Parties are residents of this state and judicial district, and the acts and activities of Defendants either took place within this district and/or were directed to this district.

## **FACTUAL ALLEGATIONS**

20. Anthony Scocca ("Scocca") became a police officer for the City of Allentown in approximately 2004.

21. Plaintiff married Anthony Scocca ("Scocca") in August 2011.

22. Plaintiff and Scocca lived together as a married couple.

23. In 2018, Scocca began to experience serious health problems.

24. Scocca was diagnosed with cancer and underwent intensive treatment in both hospitals and rehabilitation facilities.

25. He stopped actively working as a police officer due to his condition in August 2019.

26. Due to medication infusions he was receiving, he developed breathing issues, infections from low immunity, loss of hearing, and weight loss.

27. During September 2019, Plaintiff provided full-time direct care for Scocca, taking him to doctors, administering home IV treatments, and assisting him with ambulation and stairs within their home.

28. Scocca ability to walk severely deteriorated in November 2019.

29. Scocca's immediate family was not involved in direct care at this time.

30. In November 2019, Plaintiff had to attend two back-to-back conferences for continuing education for her wildlife caretaking certifications.

31. Scocca's sister – Dina - stayed at the martial home for two weekends in November to assist with housework and errands in Plaintiff's absence.

32.　　In January 2020, Scocca applied for and received a disability retirement pension from the City of Allentown.

33.　　George Scocca ("G.S.") is the father of Anthony Scocca.

34.　　Dina Scocca ("D.S.") is the sister of Anthony Scocca.

35.　　Scocca stayed at his parents' house for five days in early February 2020.

36.　　As a result of inattention to Scocca's dietary medical restrictions (due to his medications) while at his parents' house, he developed acute diabetes.

37.　　After returning to Plaintiff's care, Scocca had to be admitted to the hospital to treat acute diabetes.

38.　　In Mid-February 2020, Plaintiff agreed with Scocca's parents that he should stay with them again, due to Scocca's inability to traverse the stairs in the marital home.

39.　　Scocca was twice admitted to the hospital while under his parents' care.

40.　　On April 2, 2020, Scocca sent text messages to Plaintiff that were incoherent.

41.　　On April 9, 2020, D.S. transferred $9,500.00 out of Plaintiff and Scocca's savings account to checking account, and wrote G.S. a check for the same amount.

42.　　D.S. had no power of attorney at the time.

43.　　On April 21, 2020, Plaintiff and Scocca sent each other text messages saying "I love you (heart emoticon)" and "Love u"[1]:

---

[1] Plaintiff's texts are colored blue on the right. Scocca's texts are colored gray on the left.



44. Plaintiff intermittently asked Scocca's family members about their (Plaintiff's and Scocca's) tax return and the status of Plaintiff's Aflac disability claim.

45. Plaintiff was ignored.

46. On March 6, 2020, Scocca was admitted to the hospital with sepsis, and placed into an induced coma.

47. Scocca had no access to or ability to use his cell phone during this time.

48. Plaintiff asked D.S. for information on which room Scocca was in for purposes of visitation.

49. D.S. told Plaintiff she was not permitted to visit.

50. Plaintiff went to visit Scocca anyway on March 7th through March 13th, 2020. The hospital did permit visits, contrary to what D.S. had told Plaintiff.

51. On March 13, 2020, the hospital went into lockdown due to Covid-19 and Plaintiff could no longer visit.

52. On March 9, 2020, D.S. informed Plaintiff that Scocca's family had sent a change of address to the post office and all mail for Scocca, or for Scocca and Plaintiff, would be redirected to Scocca's parents' house to be handled by G.S.

53. On March 10, 2020, Scocca's family informed Plaintiff that they would not return a notebook containing Plaintiff's joint credentials to pay bills in online accounts and that G.S. would "take over" the accounts.

54. Plaintiff never consented to re-directing of mail, or G.S. taking over the accounts.

55. During this time period, Scocca was either unconscious or incoherent due to illness and medication, and not capable of consenting to same.

56. On March 11, 2020, Plaintiff messaged G.S. about retaining a social security attorney to apply for benefits relating to Scocca's disabled status.

57. Because Scocca was on a ventilator and not coherent, he could not speak with the attorney.

58. G.S., a retired Chairman from a financial firm, offered to speak with the attorney and "take care" of the social security situation.

59. Plaintiff never saw a social security payment issued for Scocca in their bank accounts.

60. Of note, on April 5, 2024, the same attorney informed Plaintiff that the social security checks were *still being collected*, despite Scocca passing away on March 30, 2022.

61. On March 16, 2020, Scocca's mother sent Plaintiff a message that she (Plaintiff) did not need to worry herself about bills because "We (Scocca's parents) are paying your bills."

62. On March 23, 2020, Scocca sent text messages to Plaintiff that were jumbled and incoherent.

63. On March 25, 2020, Scocca sent text messages to Plaintiff that were jumbled and incoherent, and are set forth below as an example of his capabilities and state of mind:



64. On or about March 28, 2020, *someone* (likely G.S.) replaced Plaintiff as the beneficiary for Allentown Police Department's Basic Life Insurance, and designated D.S. in lieu.

65. The designation form indicated that Plaintiff's marital status was "Separated".

66. Plaintiff and Scocca were not separated.

67. The signature line on the designation form appears as follows:



68.  A true and correct version of Scocca's signature appears as follows in a later-signed power of attorney document:

69.  The number "2" in each signature section is of an entirely different style.

70.  The signatures are, visually, nowhere close to similar.

71.  Scocca did not sign the March 28, 2020 designation form.

72.  At this point, most communication between Plaintiff and Scocca ceased for two months.

73.  On May 7, 2020, Plaintiff and Scocca Facetimed.

74.  On June 6, 2020, Plaintiff texted Scocca that she was in the dark on their finances, was not sure who was paying the bills, and was not sure she could afford the apartment without access to the martial assets.

75.  Plaintiff informed Scocca that she was considering taking a job in El Paso, Texas, that offered free housing.

76. Scocca refused to move and Plaintiff turned down the position.

77. On September 28, 2020, Plaintiff informed Scocca that someone had to be paying their bills, because it was mathematically impossible for Scocca's pension and other benefits to meet their expenses.

78. Scocca denied that someone else, like G.S., could be paying the bills.

79. Plaintiff informed Scocca that G.S. was paying the bills and to the extent that G.S. said something to the contrary to Scocca, it was not true.

80. Scocca was heavily sedated during this time period and did not grasp the situation.

81. Plaintiff continued to visit Scocca several times per week on an ongoing basis, either at medical facilities or at Scocca's parents' house.

82. This continued through 2021.

83. In August 2021, Plaintiff and Scocca planned to separate.

84. Planning was as far as the discussion progressed.

85. Neither Plaintiff nor Scocca filed for divorce.

86. Scocca continued to financially provide for Plaintiff.

87. Scocca put his and Plaintiff's granddaughter on his health care plan.

88. Plaintiff went to visit Scocca in the hospital on or about March 25, 2022.

89. Scocca was in serious condition and unresponsive.

90. Scocca passed away on March 30, 2022.

91. On April 1, 2022, Plaintiff texted G.S. and told him not to cancel or close any joint financial accounts kept between Plaintiff and Scocca, because such matters would be handled by attorneys during estate proceedings.

92. After the funeral, Plaintiff requested death certificates from the funeral director.

93.     On April 23, 2020, the funeral director refused on the basis that Plaintiff was not entitled to copies, because G.S. told him that Plaintiff and Scocca were divorced.

94.     Plaintiff and Scocca never divorced.

95.     When the funeral director confirmed this, he provided copies of the death certificate to Plaintiff.

96.     The Death Certificate shows that Scocca was married to Plaintiff at the time of his death:



97.     On April 28, 2022, G.S. texted Plaintiff and told her that he had re-titled her vehicles and had them towed from her apartment parking area.

98.     On May 20, 2022, Plaintiff received a call from Defendant Jeff Glazier, informing her that Scocca's parents were contesting her claim to Scocca's police pension on the basis that Plaintiff had "abandoned" the marriage.

99.     On August 4, 2022, an attorney offered settlement of the pension situation with the following terms:

> In order to close out this matter, my clients would like to offer a proposed resolution:
>
> 1. Half of the survivor pension to Ms. Flex and half of the survivor pension to a beneficiary to be designated by Anthony's family (likely his sister);
> 2. The family withdraws the pending request to contest the pension pursuant to section 143.20(B);
> 3. Written agreement containing a full general release of liability; and
> 4. Non-disclosure clause covering the Scocca separation, divorce proceedings, finances and financial accounts (to include no initiation or participation in any civil or criminal investigations).
>
> Please let me know your client's position at your earliest convenience.

100. It is unclear whether the attorney conveying the offer of settlement represented G.S., D.S., the Allentown Police Pension Fund Association, or some combination of all three.

101. No statute, ordinance, regulation, or policy of the Allentown Police Pension Fund Association would give it the ability to split a pension benefit between a legitimate beneficiary and an illegitimate claimant to the same benefit.

102. Plaintiff rejected the offer.

103. On May 24, 2023, the Association held a hearing regarding the pension benefits dispute between Plaintiff and Scocca's family members.

104. During this hearing, G.S. and D.S. described the occurrences set forth in Paragraph 28-89 of this Complaint in a perverted, twisted, and dishonest manner in furtherance of their goal to deprive Plaintiff of pension benefits and cause her extreme emotional distress to compel her to walk away from marital assets and rights.

105. Plaintiff was unable to secure counsel in time for the hearing and informed counsel for the Association of the need to adjourn on multiple occasions.

106. Plaintiff submitted 60 pages of exhibits for the Association's consideration. All were rejected and not considered.

107. On July 26, 2023, the Association issued a written opinion and Order denying Plaintiff pension benefits on the basis that she willfully and maliciously deserted the marriage.

108. Section 75-55B(1) of the City of Allentown Police Pension Fund Ordinance, relating to benefits for a surviving spouse or dependent children, identifies the rights of surviving spouses of retired police officers, "The surviving spouse of a retired police officer … shall be entitled to receive the same pension as was paid to the retired police officer."

109. Pursuant to principles of statutory construction, the word "shall," by definition, is mandatory. *CSC Enters. v. State Police, Bureau of Liquor Control Enforcement*, 782 A.2d 57 (Pa. Cmwlth. 2001) (citing *Oberneder v. Link Comp. Corp.*, 696 A.2d 148 (Pa. 1997)). Therefore, under Section 75-55(B)(1) of the Ordinance, the surviving spouse must receive the same pension that was paid to the retired police officer. *Id.*

110. However, Section 75-55B(2) provides:

> No surviving spouse, who has, for one year or upwards previous to the death of the police officer, willfully or maliciously deserted the police officer, shall have the right to claim any pension or service increment under the provisions of this article.

111. The Ordinance does not indicate how the Association is to determine if a spouse "willfully or maliciously" deserted a retired police officer.

112. The Association's written decision noted that the Ordinance does not define the terms "willfully" or "maliciously."

113. The Association's written decision noted "As a result, under the Ordinance, Flex must receive Anthony Scocca's pension benefits unless the Association determines she voluntarily and intentionally abandoned her duties or obligations as Anthony's wife one year or more prior to his death. Based on the standards set forth in **Pennsylvania intestate and divorce law**…" (emphasis added).

114. The Association's written decision further noted, "There does not appear to be Pennsylvania case law that sets forth the elements for establishing willful or malicious desertion in the context of a surviving spouse pension forfeiture. However, similar language exists in Pennsylvania intestate law and **Pennsylvania divorce law**." (emphasis added).

115. The Association's written decision critically observes the following:

> Pennsylvania **divorce law** provides for the desertion by a spouse as a ground for a "fault divorce." Pursuant to 23 Pa. C.S. §3301(a)(1), **a court may grant a fault divorce** to the injured spouse if the other spouse has: "Committed willful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for the period of one or more years." Merely separating and moving out of the house, however, is insufficient to qualify for a fault divorce, as the statute also provides for a no-fault option that is triggered by a mutual separation. *See also* 23 Pa. C.S. §3301(d)(2).

116. The Association is not a Court.

117. The Association had no jurisdiction to decide as a matter of fact or law whether Plaintiff engaged in willful and malicious desertion under 23 Pa. C.S. §3301(a)(1).

118. This statute leads with "Fault – The **court** may grant a divorce to the innocent and injured spouse whenever it is **judged** that the other spouse has: [engaged in willful and malicious desertion]. 23 Pa.C.S. §3301(a).

119. None of the Association members are judges.

120. A Court could, however, appoint a special master "on some or all issues" within the Dissolution of Marital Status sections of the statutes. 23 Pa. C.S. §3321.

121. However, even a report and recommendation from a special master is not binding and the Court has the sole and exclusive authority under Pennsylvania law to dissolve a marriage.

122. The Association was never appointed as a special master by a Pennsylvania Court to decide any issues within or about the marriage between Plaintiff and Scocca – and even if this were the case, it would not be binding.

123. The July 26, 2023 decision also denied shifting the pension benefit to D.S.

124. G.S. and D.S. initiated and participated in these proceedings to achieve the result of denying Plaintiff her pension benefits solely to make her life difficult and cause extreme emotional distress.

125. The July 26, 2023 decision has no legal force or effect yet deprives Plaintiff of surviving spouse disability pension benefits that are owed from the Allentown Police Pension Fund.

126. By purporting to decide an issue of law reserved exclusively to the jurisdiction of the Courts of the Commonwealth of Pennsylvania, Defendants have deprived Plaintiff of property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**COUNT I – Violation of Civil Rights Pursuant to 42 U.S.C. § 1983**
**(Against All Defendants)**

127. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

128. The Association had no jurisdiction to decide as a matter of fact or law whether Plaintiff engaged in willful and malicious desertion under 23 Pa. C.S. §3301(a)(1).

129. G.S. aided, abetted, conspired with, and spearheaded efforts by the Association state actors to deprive Plaintiff of substantive and procedural due process of law.

130. This statute leads with "Fault – The **court** may grant a divorce to the innocent and injured spouse whenever it is **judged** that the other spouse has: [engaged in willful and malicious desertion]. 23 Pa.C.S. §3301(a).

131. On July 26, 2023, the Association issued a written opinion and Order denying Plaintiff pensions benefits on the basis of finding that she willfully and maliciously deserted the marriage under 23 Pa. C.S. §3301(a)(1).

132. The July 26, 2023 decision has no force or effect except to deprive Plaintiff of surviving spouse disability pension benefits that are owed from the Allentown Police Pension Fund.

133. By purporting to decide an issue of law reserved exclusively to the jurisdiction of the Courts of the Commonwealth of Pennsylvania, Defendants have deprived Plaintiff of property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

(1) for injunctive relief requiring Defendants to immediately cease any enforcement, acknowledgement, or compliance with the July 26, 2023 Order;

(2) for injunctive relief requiring the Allentown Police Pension Fund Association and its Board members to rescind their July 26, 2023 Order;

(3) for injunctive relief requiring the Allentown Police Pension Fund Association and its Board members to cease and desist from purporting to issue Orders that decide issues of marital law;

(4) For damages in excess of $1,600,000 or other more specific amount that reflects the pension benefit that Plaintiff is entitled to as the summed monetary figure of pension payments she should have received already, and additional payments through the time of her anticipated date of death;

(5) For an award of attorneys' fees pursuant to 42 U.S.C. § 1988, together with interest and costs of suit.

(6) for such other and further relief as the Court, in its discretion, deems just and proper.

### COUNT II – Intentional Infliction of Emotional Distress
### (Against George Scocca)

134. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

135. Defendant George Scocca engaged in three (3) year intentional and reckless campaign to estrange Plaintiff from her sick and dying husband, freeze Plaintiff out of joint accounts with her husband, divest Plaintiff of insurance benefits and other financial benefits required for the care of her husband, fraudulently manipulated the finances of Plaintiff and her husband, falsified marriage information to the Commonwealth of Pennsylvania after the death of Plaintiff's husband, and cruelly and maliciously spearheaded efforts to deprive Plaintiff of police pension benefits that are still due and owing to Plaintiff.

136. The emotional distress inflicted on Plaintiff was an intentional effort to intimidate and wear Plaintiff down so that she would give up her marital rights and assets.

137. The level of emotional distress experienced by Plaintiff was and continues to be severe.

138. Plaintiff experiences panic attacks, anxiety, trouble sleeping, humiliation, fight or flight responses, and feelings of helplessness.

139. Plaintiff sees a therapist to assist with coping with the pain caused by Defendants.

140. Plaintiff has and continues to suffer from anxiety, over exaggerated fight or flight responses in matters involving trust or finances, loss of sleep, and a sense of impending doom.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor and against G.S. as follows:

(1) for an award of garden variety emotional distress damages;

(2) for an award of specific emotional distress damages;

(3) for an award of emotional distress damages to be determined and fairly awarded by the jury;

(4) For an award of interest and costs of suit.

(6) for such other and further relief as the Court, in its discretion, deems just and proper.

### COUNT III – Intentional Infliction of Emotional Distress
### (Against Dina Scocca)

141. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

142. Defendant Dina Scocca engaged in three (3) year intentional and reckless campaign to estrange Plaintiff from her sick and dying husband, freeze Plaintiff out of joint accounts with her husband, divest Plaintiff of insurance benefits and other financial benefits required for the care of her husband, fraudulently manipulated the finances of Plaintiff and her husband, falsified marriage information to the Commonwealth of Pennsylvania after the death of Plaintiff's husband, and cruelly and maliciously spearheaded efforts to deprive Plaintiff of police pension benefits that are still due and owing to Plaintiff.

143. The emotional distress inflicted on Plaintiff was an intentional effort to intimidate and wear Plaintiff down so that she would give up her marital rights and assets.

144. The level of emotional distress experienced by Plaintiff was and continues to be severe.

145. Plaintiff experiences panic attacks, anxiety, trouble sleeping, humiliation, fight or flight responses, and feelings of helplessness.

146. Plaintiff sees a therapist to assist with coping with the pain caused by Defendants.

147. Plaintiff has and continues to suffer from anxiety, over exaggerated fight or flight responses in matters involving trust or finances, loss of sleep, and a sense of impending doom.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor and against G.S. as follows:

(1) for an award of garden variety emotional distress damages;

(2) for an award of specific emotional distress damages;

(3) for an award of emotional distress damages to be determined and fairly awarded by the jury;

(4) For an award of interest and costs of suit.

(6) for such other and further relief as the Court, in its discretion, deems just and proper.

**MARGOLIS EDELSTEIN**

*/s/ John M. Nolan III*
John M. Nolan III
170 S Independence Mall W
Suite 400E
Philadelphia, PA 19106
T: (215) 931-5848
JNolan@margolisedelstein.com
*Attorneys for Plaintiff*
Dated: December 11, 2024